IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CASEY CROWLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO. _____ |
| | ) | |
| BALDWIN COUNTY, GEORGIA; | ) | |
| WILLIAM C. MASSEE, JR., SHERIFF OF | ) | |
| BALDWIN COUNTY, IN HIS | ) | |
| INDIVIDUAL CAPACITY; CORTEZ | ) | |
| SCOTT, DEPUTY SHERIFF OF | ) | <u>Jury Trial Demanded</u> |
| BALDWIN COUNTY, IN HIS | ) | |
| INDIVIDUAL CAPACITY; and | ) | |
| GENNIE BRIGGS, DEPUTY SHERIFF | ) | |
| OF BALDWIN COUNTY, IN HER | ) | |
| INDIVIDUAL CAPACITY; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS AND PERSONAL INJURY</u>

Plaintiff Casey Crowley, brings this Complaint against Defendants Baldwin County, Georgia; William C. Massee, Jr., Sheriff of Baldwin County, in his individual capacity; Cortez Scott, Sheriff of Baldwin County, in his individual capacity; and Gennie Briggs, Deputy Sheriff of Baldwin County, in her individual capacity; and states the following claims for relief:

## THE PARTIES, JURISDICTION AND VENUE

### 1.

Plaintiff is a resident of Richmond County.

### 2.

Baldwin County was established in 1803.  Baldwin County is named in memory of Abraham Baldwin, a member of the Continental Congress and founding father of the University of Georgia. After the adoption of the Constitution, Baldwin served in the United States House of Representatives and the Senate.  Baldwin County is governed by a Board of Commissioners.

### 3.

It is not known whether employees of the Baldwin County Sheriff have been placed in Baldwin County's civil service system, which would place personnel authority with the county. Baldwin County may be liable for all or part of the wrongful acts alleged against the named individual Defendants. *See Halliburton v. Peach County Sheriff's Dept.,* 2012 U.S. Dist. Lexis 137884 (N.D. Ga. 2012).

### 4.

Baldwin County may be served with process by service upon its Chief Executive Officer, as provided by Fed. R. Civ. 4 (j)(2), or through the waiver of service provisions of Fed. R. Civ. P. 4 (d).

5.

At the time of the events addressed in this action, Defendant William C. Massee, Jr. was the Sheriff of Baldwin County, Georgia. As the sheriff, Defendant Massee assumed the authority to direct and control the duties and daily activities of persons, including sworn deputies, employed by the Baldwin County Sheriff's Department. Ga. Const. Art. IX, §1, ¶ 3; *see Grech v. Clayton County,* 335 F.3d 1326, 342 (11th Cir. 2003). Defendant Massee is believed to be a resident of Baldwin County, and may be served with process at the Baldwin County Sheriff's Department, 119 Old Monticello Road, N.W., Milledgeville, Georgia 31061, or through the waiver of service provisions of Fed. R. Civ. P. 4 (d).

6.

At the time of the events alleged in this Complaint, Defendant Cortez Scott was employed by Defendant Massee as a sworn deputy sheriff employed by the Baldwin County Sheriff's Department. *See Murdock v. Cobb County,* 2013 U.S. Dist. Lexis 70203 (N.D. GA. 2013). In his capacity as a sworn deputy, Defendant Scott was responsible for performing his responsibilities in compliance with applicable federal and state laws, as well as the ordinances, regulations, customs, and usages of the State of Georgia and Baldwin County. Defendant Scott is believed to be a resident of Baldwin County, and may be served with process at the

269 Lawrence Road, N.W., Milledgeville, Georgia 31061, or through the waiver of service provisions of Fed. R. Civ. P. 4 (d).

7.

At the time of the events alleged in this Complaint, Defendant Gennie Briggs was employed by Defendant William Massee as a sworn deputy sheriff employed by the Baldwin County Sheriff's Department. *See Murdock v. Cobb County,* 2013 U.S. Dist. Lexis 70203 (N.D. GA. 2013). In her capacity as a sworn deputy, Defendant Briggs was responsible for performing her responsibilities in compliance with applicable federal and state laws, as well as the ordinances, regulations, customs, and usages of the State of Georgia and Baldwin County. Defendant Briggs can be served with process at the Baldwin County Sheriff's Department, 119 Old Monticello Road, N.W., Milledgeville, Georgia 31061, or through the waiver of service provisions of Fed. R. Civ. P. 4 (d).

8.

As this civil action is brought to address alleged violations of the Constitution and laws of the United States, this court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1343.

9.

The court has supplemental jurisdiction over Plaintiff's claims stated under state law pursuant to 28 U.S.C. § 1367(a).

4.

10.

Venue is proper in this court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

11.

At the time of the incident addressed in this Complaint, Plaintiff was an inmate in the Baldwin County Jail, awaiting trial in Baldwin County on charges of theft by receiving stolen property.

12.

On May 13, 2013, Defendants Briggs and Scott reported to their superior, Corporal Mary Turner, that an inmate, Richard Gadd, appeared to have been involved in a physical altercation.

13.

Turner instructed Briggs and Scott to retrieve Gadd from the jail dormitory and bring him to the booking area for questioning.

14.

When Gadd arrived at the booking area of the Baldwin County jail, he was observed to have a cut on his nose and two black eyes. Gadd explained that an inmate, whom he could not identify, had attacked him the night before, leading Briggs and Scott to return to the dormitory to investigate.

5.

15.

Within ten minutes, Defendants Briggs and Scott returned to the booking area with Plaintiff. Turner, Briggs, and Scott then questioned Plaintiff about the incident involving Gadd.

16.

Plaintiff denied any involvement in the incident involving Gadd. Turner, Briggs and Scott nonetheless continued to interrogate Plaintiff, claiming, despite the fact that both Plaintiff and Gadd are Caucasian, "they kn[e]w it [was] about race."

17.

During the interrogation, Plaintiff was commanded to raise his right pant leg, and revealed a tattoo of a swastika. Plaintiff explained that as a youth, and for reasons of self-preservation, he had been affiliated with a supremacist organization, but that affiliation had ended long ago.

18.

Redness and swelling were observed on Plaintiff's hands, which Plaintiff explained had come from playing volleyball with crumpled balls of paper in the dormitory, a common prison game called "handmitten."

19.

Jail medical staff was requested to examine Plaintiff's hands.  The medical staff determined the redness and swelling on Plaintiff's hands was not the result of playing handmitten, but Plaintiff nonetheless continued to maintain that he was not involved in the incident with Gadd.

20.

Turner subsequently instructed Briggs and Turner to place Plaintiff in isolation until he "cooled off."  Plaintiff's hands were cuffed behind his back and Briggs and Scott began escorting him to the hole.

21.

As Briggs and Scott were escorting him, Plaintiff exclaimed "I am not affiliated!" In response, Scott threatened to pepper-spray Plaintiff if he did not "calm down."

22.

From booking, Turner heard a commotion and sent an Officer Clements to assist.  Moments later, Briggs rushed through the booking door screaming for medical.  Turner then instructed a Sergeant Reeves and an Officer Bridges, who were conducting a perimeter check at the time, to return inside the prison wall to assist.

23.

When Reeves and Bridges reached the area of the commotion, Plaintiff was prone on the floor, bleeding profusely from his face.  Reeves asked Briggs and Scott what happened, and was told by both that they had been instructed to escort Plaintiff from booking, that Plaintiff had become verbally aggressive toward Scott, and that Plaintiff had used his shoulder to push Scott. Scott reported that he had immediately responded by taking Plaintiff to the ground using a sweep maneuver, declaring that he had no alternative but to forcibly take Plaintiff to the ground. Both Briggs and Scott reported that they had acted in total compliance with Baldwin County standard operating procedure throughout the entire encounter.

24.

Thirty minutes later, while being interviewed about the incident by Jail Commander, Captain J. Petty, Briggs and Scott restated what they had told Reeves earlier, assuring Petty "it was a clean use of force."

25.

Captain Petty continued his investigation of the incident by obtaining video surveillance of the incident. The video showed no evidence of Plaintiff being combative or aggressive toward Briggs or Scott, as they had reported.

26.

Petty then notified Defendant Massee of the incident and had Captain Lumpkin review the video. Captain Lumpkin decided, and communicated to Defendant Massee that the Georgia Bureau of Investigation should be notified to review the incident.

27.

The following morning, the case was turned over to GBI Agent David Peebles. Briggs and Scott were informed they were the subjects of an internal investigation and both were again asked if the incident was legitimate – to which both again replied "yes."   Petty made sure that both deputies understood the implications of lying, to which Briggs emphatically responded, stating for the fourth time that the incident and sweep maneuver were justified.

28.

Over the next week and a half, the GBI and the Baldwin County Sheriff's office continued to investigate the incident. As part of the investigations, both Briggs and Scott were again questioned about the incident.

29.

When Briggs was re-questioned, she changed her testimony, stating that she never witnessed hostile actions by Plaintiff and that she was not really sure what happened.  Jail nurse Janey Smith corroborated Briggs' change in her statement,

reporting that Briggs had told her that she had witnessed Scott's leg sweep of Plaintiff, and that it was "not right".

30.

May 28, 2013, when Captain Petty confronted Briggs about the obvious inconsistencies in her statements, Briggs stated "you have to look out for and cover for your coworkers because it has to be like family."

31.

When Scott was re-questioned about the incident and the propriety of using a sweep maneuver on a prisoner in hand cuffs, he confessed that Plaintiff had never threatened him, but that he believed his use of the sweep maneuver was proper – as he had done it to other prisoners prior to Plaintiff and had seen other officers do the same.

32.

Both investigations concluded that Briggs and Scott had violated applicable jail procedure.

33.

Briggs was found to have been in violation of the Code of Conduct A-130 II-5, which provides that no employee shall make a false statement or intentionally misrepresent facts under any circumstances. Briggs was suspended for three days and required to attend an ethics training class.

34.

Scott was found to have acted in violation of the Use of Force Policy 0-101, III-A and Code of Conduct A-130 I-6, and was terminated for the unjustified use of force.

35.

On May 13, 2013, after the incident, Plaintiff was taken to the Medical College of Georgia for the treatment of his injuries. Plaintiff was diagnosed at the Medical College with major trauma, including a right mandible fracture which required a manual closed reduction with mandibular fixation, laceration of his right ear canal with a profound hearing loss, and other associated pain and suffering.

36.

Upon his release from the Medical College of Georgia, Plaintiff was not returned to Baldwin County Jail, but instead taken to Emmanuel County Jail on the basis of outstanding warrants.

37.

On July 15, 2014, Plaintiff was released from his imprisonment.  All charges against Plaintiff in Baldwin and Emmanuel County were dismissed.

11.

38.

To date, Plaintiff has incurred approximately $30,111.45 in medical expenses, and will incur additional expenses for additional surgery to repair his fractured jaw.

39.

As a direct and proximate result of Defendant Scott's conduct in using a sweep maneuver while Plaintiff was handcuffed, as explained in detail above, and Defendant Briggs' failure to intervene, Plaintiff has suffered and will continue to suffer permanent injuries to his jaw and right ear, severe pain and suffering, and more than likely future medical expenses.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Violation of Civil Rights: Unlawful Malicious Use of Force

40.

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment against prison inmates. The Eighth Amendment's prohibition against cruel and unusual punishment extends to the circumstances of this action through the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 666-67, 82 S.Ct. 1417, 1420-21 (1962), *Thomas v. Bryant,* 614 F.3d 1288, 1303 (11th Cir. 2010).

12.

41.

During his incarceration in the Baldwin County jail, Plaintiff had a right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.

42.

At the time Plaintiff was swept to the concrete floor on May 13, 2013 by Defendant Scott, it was clearly established that an inmate had a right to be free from serious injury caused by a law enforcement officer who used physical force, not in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm.  This right was confirmed by the Eighth Amendment and by substantive due process under the Fourteenth Amendment of the United States Constitution.

43.

Plaintiff had not, in fact, resisted Defendant Scott and Brigg's efforts to escort him to isolation when Defendant Scott kicked Plaintiff's legs out from under him. There was no need, therefore, for Defendant Scott to have used any force, much less the highly dangerous level of force that he used, to maintain or restore discipline. There is, consequently, no acceptable justification for the serious injuries Defendant Scott caused Plaintiff to encounter.

13.

44.

Defendant Scott's assault upon Plaintiff on May 13, 2013, amounted to violations of Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution to be free from personal assault because no reasonable officer in Defendant Scott's positions would have believed that there was any basis to perform a forcible takedown of the Plaintiff under the known circumstances.

45.

At the time he acted on May 13, 2013 to kick Plaintiff's legs out from under him, causing Plaintiff to fall facedown onto the hard floor with his hands handcuffed behind his back, Defendant Scott was engaged in his official duties as a Baldwin County Deputy, and was acting under the authority of the statutes, ordinances, regulations, customs, and usages of the State of Georgia and Baldwin County, and within the scope of his employment as a Baldwin County Deputy.

46.

Defendant Scott's conduct in intentionally kicking Plaintiff's legs out from under him while Plaintiff was handcuffed and causing Plaintiff to fall face down on the hard floor was clearly a departure from accepted standards of decency and involved the unnecessary and wanton infliction of pain and severe physical and emotional injury.

14.

47.

Defendant Briggs' failure to intervene in order to take reasonable steps to protect Plaintiff from the unreasonable and excessive use of force by Defendant Scott, and her actions to then participate in a cover-up of Defendant Scott's unlawful conduct renders her also personally liable to Plaintiff for the injuries and damages Plaintiff sustained on account of Defendant Scott's assault upon him.

48.

Defendants Scott and Briggs are liable to Plaintiff for all of the damages Plaintiff has sustained and will sustain as a consequence of their violations of Plaintiff's rights under the Eighth and Fourteenth Amendments of the United States Constitution.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983 (Supervisory Liability)

49.

Each city and county officer takes an oath of office in which he or she swears to protect and defend the Constitutions and laws of the United States and the State of Georgia.

50.

Each city and county officer, and each officer's superior officer who has the final decision-making authority over the inferior officer's performance of his or her

15.

sworn duties, has taken an oath that he or she will not engage in the malicious and sadistic use of force against prisoners.

51.

To protect the fundamental right of citizens and others to due process of law, a person who is a prison inmate must have procedures in place to provide those persons with safe and humane treatment.

52.

At the time of the occurrence at issue, it was well known, or should have been well known by Defendant Massee, that it was unlawful and unconstitutional for a deputy or other jail officers under his control to employ excessive force against a prison inmate.

53.

Under the known facts of this civil action, particularly Defendant Scott's statement that he had employed the sweep maneuver on past occasions to discipline jail inmates, and had observed other officers do the same, it is plausible to conclude that the sworn officers of the Baldwin County Sheriff had developed a common practice of allowing for the use of excessive force to discipline and retaliate against inmates.

54.

It is further plausible to conclude from the known facts that Sheriff Massee was aware of a practice of abuse by Baldwin County Jail guards on jail inmates, and was deliberately indifferent to the abuse of inmates in his custody by failing to enforce policies, failing to properly train, failing to properly discipline, and by allowing a culture to develop within the Baldwin County jail by which the use of excessive force against inmates was not only tolerated, but encouraged.

55.

Supervisors may be held liable under 42 U.S. § 1983 for a subordinate's use of excessive force against inmates in violation of the Eighth Amendment on the basis of supervisory liability. *McCreary v. Brevard County Sheriff,* 456 Fed. Appx. 790, 793 (11th Cir. 2010).

56.

In failing to properly train, monitor, supervise, and discipline its law enforcement officers in the constitutionality reasonable use of force against inmates of the Baldwin County jail, it is likewise plausible at this stage of the action to conclude that Defendant Baldwin County may be liable for the physical and emotional injuries Plaintiff has sustained and will continue to sustain as a direct and proximate result of these Defendants' use of excessive force against him.

17.

57.

The facts alleged in this action further show the need for the establishment of policies and appropriate training of law enforcement officers at the Baldwin County Sheriff's Department in the use of physical force against jail inmates.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF
### State Law: Assault and Battery

58.

Defendant Scott's unjustified and unlawful physical assault on Plaintiff amounts to a malicious and deliberate assault and battery of Plaintiff's person.

59.

Defendant Scott's assault and battery upon of Plaintiff on May 13, 2013, as described above, was plausibly done with actual malice and with the intent to injure Plaintiff.

60.

Likewise, Defendant Briggs failure to intervene to prevent Defendant Scott's assault upon Plaintiff, and her conduct, in association with Defendant Scott, in acting to cover up Scott's use of excessive force contributed to the violation of Plaintiff's right to be free from unreasonable physical assault and the resultant injuries caused by the assault.

18.

61.

As a direct and proximate result of the individual Defendants' intentional assault and battery of Plaintiff, Plaintiff has been caused to suffer severe physical and emotional injuries, including a mandibular fracture, malocclusion, and acute hearing loss in his right ear arising from lacerations to his ear canal.

62.

As a direct and proximate result of the indivudal Defendants intentional assault and battery of Plaintiff, Plaintiff has incurred the medical expenses addressed at paragraph 38 of this Complaint, and shall most likely incur additional medical expenses in the future.

63.

At the time Defendant Scott deliberately injured Plaintiff on May 13, 2013, he was acting as a sworn deputy employed by Defendant Massee, and within the course and scope of his duties as a prison guard.

64.

At the time Defendant Briggs failed to intervene to prevent Defendant Scott's assault and battery upon Plaintiff on May 13, 2013, and then acted to cover up Scott's unlawful act, she was acting as a sworn deputy employed by Defendant Massee, and within the course and scope of her duties as a prison guard.

65.

Defendants are liable to Plaintiff, jointly and severally, for all damages Plaintiff sustained on account of Defendant Scott's assault and battery upon Plaintiff's person.

66.

Baldwin County was served with an Ante Litem Notice as required by O.C.G.A. § 36-33-5 on October 8, 2013, and again on May 5, 2014.  A true and correct copy of each Ante Litem Notice is attached to this Complaint collectively referred to as Exhibit "A."

67.

On November 19, 2013, in response to Plaintiff's Ante Litem Notice, Baldwin County had a letter sent to Plaintiff's counsel in which it denied any liability. A true and correct copy of that letter is attached hereto as Exhibit "B."

## **PLAINTIFF'S FOURTH CLAIM FOR RELIEF**
### **Punitive Damages and Expenses of Litigation**

68.

The individual Defendants' conduct in unlawfully using and condoning the use of excessive force which caused Plaintiff physical injury and emotional distress, was intentional and evidences a willful, wanton, and reckless disregard for Plaintiff's constitutional and common law rights.

20.

69.

The individual Defendants are liable to Plaintiff for punitive damages to punish Defendants or to deter them from repeating the type of wrongful conduct alleged in this action.

70.

Pursuant to 42 U.S.C. § 1988 and state law, Plaintiff is further entitled to an award of reasonable attorney's fees and expenses of this litigation.

**WHEREFORE,** Plaintiff demands the following relief:

1. That Defendants be served with a copy of this Complaint and a summons as provided by law;

2. That Plaintiff recover damages for the deprivation of his civil rights and liberties in an amount to be determined by the enlightened conscience of a fair and impartial jury;

3. That Plaintiff recover damages for his physical and emotional pain and suffering in an amount to be determined by the enlightened conscience of a fair and impartial jury;

4. That Plaintiff recover damages for any loss of income and job opportunity caused by Defendants' wrongful conduct;

5. That Plaintiff be awarded punitive damages against the individual Defendants in such an amount as the jury, in its enlightened conscience,

21.

determines to be appropriate to punish these Defendants or to deter them from repeating their wrongful acts;

6.   That Plaintiff recover reasonable attorney's fees and expenses of litigation as allowed under 42 U.S.C. § 1988 and state law;

7.   That Plaintiff receive any further relief that may be just, proper, and equitable under the circumstances; and

8.   That Plaintiff be granted a trial by jury, which Plaintiff herewith demands.

Dated: September 8, 2014.

Respectfully submitted,

*/s/ Mitchell E. McGough*
Mitchell E. McGough
Georgia Bar No.: 460942

*/s/ James L. Ford, Sr.*
James L. Ford, Sr.
Georgia Bar No.: 268050

*/s/ Danny L. Durham*
Danny L. Durham
Georgia Bar No.:  235514

JAMES LEE FORD, P.C.
A Professional Corporation
6111 Peachtree Dunwoody Road, Building G, Suite 100
Atlanta, GA 30328
jlf@jlfordlaw.com
memcgough@gmail.com
Telephone: (678) 281-8750
Facsimile: (678) 281-8755

Durham & Crane Law Firm, P.C.
2350 Washington Road
Augusta, Georgia 30904
Telephone (706) 738-7111
Facsimile (706) 738-8010
www.durhamandcranelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date electronically filed the within and foregoing COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS AND PERSONAL INJURY by the CM/ECF online filing system with U.S. District Court for the Middle District of Georgia and that I took steps to commence the process of serving Defendants a copy of the foregoing complaint by mail through waiver of service provisions of Fed. R. Civ. P. 4(d) to:

April Bragg, CEO Baldwin County
P.O. Box 751
Milledgeville, Georgia 31061

William C. Massee
Baldwin County Sheriff Office
119 Old Monticello Road, N.W.
Milledgeville, Georgia 31061

Cortez Scott
269 Lawrence Road, N.W.
Milledgeville, Georgia 31061

Gennie Briggs
Baldwin County Sheriff Office
119 Old Monticello Road, N.W.
Milledgeville, Georgia 31061

(Signatures next page)

24.

Dated: September 8, 2014.

Respectfully submitted,

*/s/ Mitchell E. McGough*
Mitchell E. McGough
Georgia Bar No.: 460942

*/s/ James L. Ford, Sr.*
James L. Ford, Sr.
Georgia Bar No.: 268050

*/s/ Danny L. Durham*
Danny L. Durham
Georgia Bar No.:  235514

JAMES LEE FORD, P.C.
A Professional Corporation
6111 Peachtree Dunwoody Road
Building G, Suite 100
Atlanta, GA 30328
jlf@jlfordlaw.com
memcgough@gmail.com
Telephone: (678) 281-8750
Facsimile: (678) 281-8755

Durham & Crane Law Firm, P.C.
2350 Washington Road
Augusta, Georgia 30904
Telephone (706) 738-7111
Facsimile (706) 738-8010
www.durhamandcranelaw.com