**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **CASEY CROWLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:14-CV-326 (MTT)** |
| ) | |
| **CORTEZ SCOTT and GENNIE** ) | |
| **BRIGGS,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

Plaintiff Casey Crowley has moved for partial summary judgment on his

excessive force claim against Defendant Cortez Scott.  (Doc. 24).  Defendants Scott

and Gennie Briggs have moved for summary judgment on Crowley's claims against

them.  (Docs. 30; 33).  Crowley's motion and Scott's motion are **DENIED**.  Briggs's

motion is **GRANTED**.

## I.    BACKGROUND

On May 12, 2013, Casey Crowley, a pretrial detainee at Baldwin County Jail,

punched another inmate in the face.  (Docs. 30-1 ¶ 3; 33-2 ¶ 1; 38-2 ¶ 3; 40-2 ¶ 1).  The

next day, Defendants Scott and Briggs escorted Crowley to booking to speak with

Corporal Turner about the incident.  (Docs. 30-1 ¶¶ 7, 10; 38-2 ¶¶ 7, 10).  Briggs

testified that Crowley became "verbally hostile" when asked about the altercation, and in

a statement about the incident, Scott described Crowley as "very aggressive[,] hostile,"

and uncooperative.  (Docs. 29-2 at 35; 24-4 at 17:2-5).  Crowley testified that he "might

have become a little animated … not yelling[, but i]t might have gotten a little … up

there…." (Doc. 28-1 at 81:8-15). Crowley was also asked to lift his pants leg to reveal his swastika tattoo. (Doc. 38-4 at 16). Scott stated that Corporal Turner instructed him and Briggs to escort Crowley to medical isolation to see if he would calm down. (Docs. 29-2 at 36; 30-1 ¶ 17; 38-2 ¶ 17).

While escorting Crowley, Scott and Briggs walked on either side of him. (Doc. 24-3 at 32:20-23). They also handcuffed Crowley behind his back, and Scott held his left arm. (*Id.*). Scott testified that Crowley "kept … jerking" and "continued … going back and forth talking to me and … Briggs," saying "y['a]ll don't give a fuck about inmates here. Y['a]ll just want to fuck somebody up." (*Id.* at 32:23-33:15, 35:2). Scott told Crowley he would be pepper sprayed if he "continued to be verbally aggressive towards [them]." (*Id.* at 33:1-3). Officer Ernesto Lopez, who witnessed a part of the escort, stated that he observed Crowley being "loud and noncompliant … and continually turning towards Deputy Scott in an aggressive manner." (Docs. 29-3 at 9:23-10:23; 38-4 at 13). Briggs also testified that Crowley used profanity. (Doc. 24-4 at 17:17-19).

In Scott's statement about the incident and in a joint report by him and Briggs, Scott stated that Crowley was "still very aggressive [and] hostile" and that he "continued to yell and [then] pushed [him]." (Doc. 40-4 at 10, 24). Scott explained in his deposition that "once we turned the corner[, Crowley] … jerked again, but it was more or less like an elbow[,] and I felt him hitting under my arm." (Doc. 24-3 at 35:12-19). Scott testified that he perceived this as a threat towards him and to Briggs's safety, so he "took [Crowley] to the ground" through a leg sweep maneuver that "took his feet from under him." (*Id.* at 35:24-36:4). Scott stated that he held the back of Crowley's shirt to make it

a controlled takedown and did not try to cause bodily harm.  (*Id.* at 38:6-16, 42:19-43:1, 68:1-14).  However, Scott admitted that he was not able to take him down in a controlled manner, in part, because of Crowley's size.  (*Id.* at 71:10-16).  Scott's maneuver caused Crowley to hit his face on the concrete floor, and blood came out of his ears and mouth.  (Docs. 30-1 ¶¶ 25-26; 38-2 ¶¶ 25-26).  Scott stated that he sent Briggs to get help, and Briggs testified that she checked on Scott and found a nurse.  (Docs. 24-3 at 43:14-16; 24-4 at 16:19; 33-2 ¶ 20; 40-2 ¶ 20).  Scott, who is five feet seven inches tall, testified he made a "split second decision" to use a leg sweep because he felt that Crowley, who is six feet four inches tall and weighs 200 pounds, posed a threat to him and Briggs, who is an even smaller female.  (Doc. 24-3 at 42:1-14, 47:2-5, 71:1-6).  Scott admitted that he was not trained to use this maneuver on someone with both hands cuffed behind his back.  (*Id.* at 68:16-20).

Crowley denied that he ever pushed, nudged, touched, or resisted Scott before being taken down and testified that Scott was "pretty rough" as he escorted him and initiated the takedown after Crowley told him "you just want to put somebody in the hole."  (Docs. 28-1 at 87:5-8, 89:10-22, 90:9-11; 38-4 at 17).  Crowley also disputes that he was being verbally aggressive, jerking his arm, or turning toward Scott threateningly while he was being escorted.  (Doc. 38-2 ¶¶ 22-23).  During an investigation, Briggs told a Georgia Bureau of Investigation ("GBI") agent that Crowley "was not verbally threatening and did not say any derogatory terms to … Scott" and was not arguing but questioning "why he was being taken to isolation" and that Scott put "strength into it" to force the fall.  (Doc. 38-4 at 72-73).  Crowley told the GBI agent that Scott was "very

abrasive and very upset" from the point he saw Crowley's swastika tattoo and after the takedown said "you get what you deserve."  (Doc. 38-4 at 17).

It is undisputed Briggs did not see Crowley elbow or push Scott.  (Docs. 24-4 at 25:7-21; 30-1 ¶ 28; 38-2 ¶ 28; 38-4 at 73).  Briggs testified that she was walking behind Scott and Crowley as they rounded a corner, and as she turned the corner, she saw "Crowley … falling to the ground" after the "leg sweep" and testified that "it happened in a split second."  (Doc. 24-4 at 18:2-19:18).  Briggs told the GBI agent that after they rounded the corner, she put her hand on Crowley's arm before Scott used the leg sweep.  (Doc. 38-4 at 72).  Crowley testified it appeared to him that Briggs did not expect Scott's use of force and that "she was being pulled to the ground as well."  (Doc. 28-1 at 88:17-21, 125:11-13).  He qualified this testimony by saying he did not "really know what she honestly did."  (*Id.* at 88:21-22).  It is undisputed that Briggs did not know ahead of time that Scott was going to use the sweep maneuver.  (Docs. 30-1 ¶ 19; 38-2 ¶ 19).

Captain Michael Lumpkin reviewed the video of the incident.  (Doc. 38-6).  He testified that the video did not clearly show Scott's leg sweep because of the distance of the incident from the camera and because a door partially blocked the view.  (Doc. 24-5 at 20:3-8).  Nevertheless, it appeared to him that Scott's use of force was "unnecessary" and that there was not an "imminent threat."  (*Id.* at 20:7-8, 30:22-25).  Captain Lumpkin asked the GBI to conduct a criminal investigation.  (*Id.* at 16:22-25).  Although the GBI agent found nothing criminal about Briggs's conduct, the agent issued his findings about Scott's conduct to a grand jury.  (*Id.* at 22:18-24).  Scott pled guilty to a misdemeanor charge of reckless conduct.  (Doc. 24-2 at 18-24).

Captain Lumpkin also conducted an internal investigation.  (Doc. 24-5 at 18:4-9, 23:16-24).  In addition to concluding that Scott did not use appropriate force, he determined that Briggs's statement in her joint report that Crowley pushed Scott was inconsistent with her later statement that she did not see any physical contact between Scott and Crowley.  (*Id.* at 24:4-25:2, 26:17-28:11).  Captain Lumpkin testified that he determined Briggs was attempting to cover up for Scott in her first statement and that she was placed on probation for her misrepresentations.  (*Id.* at 37:16-25, 40:12-17).  Scott was terminated as a result of this incident.  (*Id.* at 52:11-13).

Crowley then filed this lawsuit, asserting a Fourteenth Amendment excessive force claim against Scott and a failure-to-intervene claim against Briggs pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Crowley also asserted state-law claims for assault and battery against Scott and state-law claims against Briggs based on her failing to intervene and allegedly covering up for Scott.[1]  (*Id.*).

## II.    DISCUSSION

### A.  Motion for Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Id.*  The party may support

---

[1] Crowley also asserted claims against Baldwin County and Sheriff William Massee, but the Court granted Crowley's motion to dismiss these Defendants.  (Doc. 37).

its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment."  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438).  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."  *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict.  *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'"  *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. ... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'"  *Strickland v. Norfolk*

*S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 940, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show … that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted).  The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

**B. Qualified Immunity Standard**

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).   To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation."   *City of W. Palm Beach*, 561 F.3d at 1291.   This two-step analysis may be done in whatever order is deemed most appropriate for the case.   *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

        The clearly established law[2] must provide a defendant with "fair warning" that her conduct deprived the plaintiff of a constitutional right.   *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002).   A plaintiff "can demonstrate that the contours of the right were clearly established in several ways."   *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012).   First, a plaintiff can show that "a materially similar case has already been decided."   *Id.* (internal quotation marks and citations omitted).   Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation."   *Id.* (internal quotation marks and citation omitted).   "Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'"   *Id.* (citation omitted).   "[E]xact factual identity with a previously decided

---

[2] Clearly established law in this circuit means decisions of the United States Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

### C. Crowley's and Scott's Cross-Motions for Summary Judgment

In Crowley's motion, he contends he is entitled to partial summary judgment on his Fourteenth Amendment excessive force claim against Scott because (1) there is no genuine dispute whether Scott violated his constitutional rights, (2) the law was clearly established Scott's conduct was unlawful, and (3) Scott's guilty plea to the criminal charge of reckless conduct establishes his liability as a matter of law. (Doc. 24-2 at 10-13). In Scott's motion, he argues he is entitled to qualified immunity on the excessive force claim and summary judgment on the remaining claims because (1) there is insufficient evidence he violated Crowley's constitutional rights, (2) he did not violate clearly established law, (3) he is entitled to official immunity on the state-law claims, and (4) "there is no evidence to support a claim for punitive damages." (Doc. 30-2).

### 1. Whether there is a genuine issue of fact that Scott violated Crowley's constitutional rights

Crowley argues there is no genuine dispute of fact whether Scott used excessive force in violation of the Fourteenth Amendment's Due Process Clause when he took Crowley to the ground with a leg sweep maneuver.[3] (Doc. 24-2 at 10). Scott counters he is entitled to qualified immunity because there is insufficient evidence for a reasonable jury to conclude he used excessive force. (Doc. 30-2 at 6-12). To establish an excessive force claim in violation of the Fourteenth Amendment, "a pretrial detainee

---

[3] It is undisputed that Crowley was a pretrial detainee, and thus, as discussed below, the Fourteenth Amendment applies. Crowley and Scott mistakenly believe that the excessive force inquiry here is whether a defendant used force maliciously and sadistically for the purpose of causing harm. (Docs. 24-2 at 11; 36 at 4). However, the Supreme Court eliminated the subjective element for Fourteenth Amendment excessive force claims in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and, as discussed below, held that an objective reasonableness standard applies.

must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. "[P]roof of intent … to punish is [not] required for a pretrial detainee to prevail …[;] a pretrial detainee can prevail by providing … objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 2473-74. Whether the force was objectively unreasonable "turns on the facts and circumstances of each particular case." *Id.* at 2473 (internal quotation marks and citation omitted). This inquiry is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

The following factors are relevant to the question of reasonableness or unreasonableness of the force:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* Courts are also to keep in mind that "[o]fficers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" *Id.* at 2474 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Further, "a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." *Id.*

The evidence in this case presents two competing, contradictory versions of what happened.[4]  In Scott's version, the majority of the factors from *Kingsley* weigh in his favor.  Even though Crowley was handcuffed, he was non-compliant with Scott's commands, used profanity, yelled, was threatening and aggressive, jerked "like trying to pull away," and then elbowed and/or pushed Scott.  (Docs. 24-3 at 32:23-33:15, 34:2-3, 35:2, 35:12-19; 40-4 at 10, 24).  Officer Lopez, who witnessed part of the escort, corroborated that Crowley was non-compliant, threatening, and aggressive towards Scott.  (Docs. 29-3 at 9:23-10:23; 38-4 at 13).  Thus, this evidence, if credited, establishes a need for force.  *See Bennett v. Parker*, 898 F.2d 1530, 1531, 1533 (11th Cir. 1990) (concluding there was a need for force where the plaintiff "became belligerent … [,] curs[ed] at the officers[,] creat[ed] a disturbance …[, and] refused to calm down").

Further, if Scott's version is credited, it cannot be said, as a matter of law, that the amount of force Scott used was disproportionate to the need for force.  Crowley had just been hostile at booking and then escalated his hostility during Scott and Briggs's escort by becoming more aggressive and threatening and then elbowing and/or pushing Scott, resulting in Scott making a "split-second decision" to control the situation by taking Crowley down with a leg sweep while holding the back of his shirt.  (Docs. 24-3 at 47:4-7; 29-2 at 35; 24-4 at 17:2-5).  Again, the reasonableness of a particular use of force is examined from the perspective of a reasonable officer at the scene, not 20/20 hindsight.  *Kingsley*, 135 S. Ct. at 2473.  And "[t]he calculus of reasonableness must

[4] Although the analysis of Crowley's and Scott's motions for summary judgment on the excessive force claim is combined, the Court has considered the motions on their own merits and has resolved all reasonable inferences against the party whose motion is under consideration.  *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.  Specifically, when examining Crowley's motion for partial summary judgment, the Court has viewed the evidence in the light most favorable to Scott's version of events and has drawn all reasonable inferences against Crowley.  Likewise, when examining Scott's motion for summary judgment, the Court has viewed the evidence in the light most favorable to Crowley's version of events and has drawn all reasonable inferences against Scott.

embody allowance for the fact that … officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.

Also, in Scott's version, he reasonably perceived that Crowley, who had already been acting aggressively, posed a threat to him when his aggression became physical and to Briggs, who is smaller and had her hand on Crowley's arm.  (Doc. 24-3 at 35:12-36:4, 42:1-14, 71:1-6).  Finally, while "Scott does not dispute that the injury … was serious" (Doc. 30-2 at 10), he made an effort to temper the severity of his forceful response by immediately instructing Briggs to get medical help while he stayed with Crowley.  (Doc. 24-3 at 43:14-16).

But in Crowley's version of events, the majority of the factors weigh in his favor. Crowley was handcuffed and denied that he ever pushed, nudged, touched, or resisted Scott, and Briggs stated that Crowley was not verbally threatening.  (Docs. 28-1 at 90:9-11; 38-4 at 17, 72).  Thus, there was no need for force.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008) ("[The plaintiff] neither resisted arrest nor posed a danger to [the defendant] sufficient to warrant a blow to the stomach.  Thus [the defendant] was not entitled to use any force at that time.").  Nevertheless, Scott "slammed [him] into the ground so hard [that Crowley] … pulled [Briggs] down with [him]."  (Doc. 28-1 at 89:23-24).  Given these facts, if credited, the amount of force from the leg sweep would be disproportionate to the lack of need for force.  Likewise, Crowley's alleged non-resistance while handcuffed and lack of physical aggression or verbal threats would make any perceived threat that he posed unreasonable.  Finally,

Scott's leg sweep caused serious injuries when Crowley's face hit the concrete floor: his chin split open, his eardrum was perforated resulting in hearing loss, and his jaw was fractured.[5]  (Doc. 28-1 at 113:22-117:17, 118:11-17, 128:10-129:22).

Clearly, the parties' testimony and evidence conflict on the nature of the incident and the justification of Scott's use of force.  And, although Crowley incorrectly contends that the video confirms his version (Doc. 38-1 at 3, 9), the video, being partially obstructed by a door and from a limited angle, does not flatly contradict either party's version of events.  *See Logan v. Smith*, 439 F. App'x 798, 801 (11th Cir. 2011) ("[T]his Court will accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts. … [But] the record evidence does not flatly contradict [the plaintiff's] allegations and, therefore, his version of the events cannot be discounted—nor the defendants' version credited—at this point in the litigation.").  Thus, "we are simply left with different stories told by different litigants."[6]  *Id.* at 802 (concluding summary judgment in the defendant's favor was inappropriate where the video evidence did not flatly contradict the plaintiff's allegations and where the evidence presented "different stories told by different litigants").

Therefore, given the conflicting evidence and after consideration of the relevant factors in the context of the facts and circumstances of this case, the Court concludes there is a genuine issue of fact whether the force used was objectively unreasonable. *See Hall v. Bennett*, 447 F. App'x 921, 924 (11th Cir. 2011) (concluding summary

---

[5] This is a non-exhaustive list of Crowley's alleged injuries.

[6] Scott contends, in part, that he is entitled to summary judgment because Crowley's only evidence is his own testimony.  However, "for purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,'" and the Court may not disregard it "in determining whether there is a genuine dispute of fact on a material issue in this case."  *Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012).

judgment was inappropriate where the evidence left the Court "with two competing, contradictory stories of what happened" and criticizing the district court for "improperly weigh[ing] the witnesses' credibility by favoring" the defendant's account over the plaintiff's).

### 2. Whether the law was clearly established

It is undisputed that Scott was acting within his discretionary authority, and the Court has concluded that a reasonable jury could find that Scott violated Crowley's constitutional rights by using excessive force.  Thus, Scott is entitled to qualified immunity only if the law was not clearly established that his conduct was unlawful.

To overcome Scott's qualified immunity defense, Crowley cites the former rule for Fourteenth Amendment excessive force cases: a plaintiff can overcome the defense of qualified immunity simply by establishing the violation of his constitutional rights.  (Doc. 38 at 8 (citing *Fennell v. Gilstrap*, 559 F.3d 1212, 1216-17 (2009)).  This *was* the rule because "the subjective element required to establish [a Fourteenth Amendment excessive force claim was] so extreme that every conceivable set of circumstances in which this constitutional violations occurs is clearly established to be a violation of the Constitution."  *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002).  However, because the Supreme Court's decision in *Kingsley* eliminated the subjective element in Fourteenth Amendment excessive force claims, a plaintiff asserting the claim must establish a constitutional violation *and* that the defendant violated clearly established law.  *See Kingsley*, 135 S. Ct. at 2474-75; *see also Rojo v. Sergeant*, 2015 WL 9302844, at *3 (M.D. Fla.).

Scott argues "the law was not clearly established that the amount of forced used was excessive in response to the resistance [Crowley] offered in response to the directions Scott had given him." (Doc. 30-2 at 12). "In determining whether a right is clearly established, '[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Hadley*, 526 F.3d at 1330, 1333 (alterations in original) (citation omitted). At the time of the events in this case, the law was clearly established that a handcuffed, non-resisting, and otherwise compliant person has a "right to be free from excessive force." *Id.* at 1333-34 (collecting cases); *Lee v. Ferraro*,[7] 284 F.3d 1188, 1199 (11th Cir. 2002) (concluding slamming a criminal suspect's head onto the hood of a car was excessive force when she was handcuffed, non-resistant, and secure); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (concluding, without case law on point, that the defendants were not entitled to qualified immunity because the evidence, if believed, suggested "the officers used excessive force in beating [the plaintiff] even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way"). Therefore, if a jury credits Crowley's version that Scott used a leg sweep while Crowley was handcuffed, non-resistant, and otherwise not creating the disturbance that Scott described, then no reasonable officer in Scott's position could have believed that Scott's use of force was lawful. *See Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs*, 456 F. App'x 845, 849 (11th Cir. 2012) ("Given that [the plaintiff's] evidence, if credited, established a Fourteenth Amendment violation, [d]efendants … are not entitled to qualified immunity at the summary judgment stage … . When considering qualified immunity at summary judgment, [district courts] are required to view the facts in the light

---

[7] The Court notes that Crowley cited this case for support in a notice of additional authority. (Doc. 41).

most favorable to [the plaintiff] and draw all reasonable inferences from those facts in

her favor." (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007)).

Accordingly, Scott is not entitled to qualified immunity.[8]

### 3.  Whether Scott's guilty plea establishes his liability as a matter of law

Crowley argues that he is entitled to summary judgment because Scott pled

guilty to a criminal charge for reckless conduct under O.C.G.A. § 16-5-60(b).  (Doc. 24-2

at 12-13, 18-25)  Scott specifically pled guilty to:

> unlawfully endanger[ing] the bodily safety of Casey Crowley … by
> consciously disregarding a substantial and unjustifiable risk that his act, to
> wit: executing a foot sweep on … Crowley while said inmate was
> handcuffed behind his back, would endanger the safety of said person,
> said disregard constituting a gross deviation from the standard of care
> which a reasonable person would exercise in the situation ….

(*Id.* at 18-19)  Scott contends his guilty plea does not establish his liability because it

does not demonstrate he acted maliciously or sadistically.  (Doc. 36 at 6-7)  However,

this argument misses the mark because, as discussed, the Supreme Court in *Kingsley*

eliminated the subjective element for Fourteenth Amendment excessive force claims.

However, Crowley's argument that Scott's guilty plea establishes his civil

liability as a matter of law also misses the mark.  While Crowley pled guilty to

"consciously disregarding a substantial and unjustifiable risk" by using a leg

sweep on a handcuffed Crowley, he did not admit to facts establishing his

conduct was objectively unreasonable under the Fourteenth Amendment as a

---

[8] Scott alternatively argues that he is entitled to summary judgment because the facts clearly indicate that the injury to Crowley's face was an accident.  (Doc. 30-2 at 13)  In support, he compares this case to the examples the Supreme Court cites in *Kingsley* where a Taser accidently goes off or "an officer unintentionally trips and falls on a detainee."  135 S. Ct. at 2472.  The Supreme Court opined that these examples would not result in liability because an officer must deliberately use the force that is in question. *Id.*  This case is distinguishable from those examples because Scott's testimony indicates that he purposely used the leg sweep.  (Doc. 24-3 at 37:23-38:5)  That he may not have intended this force to result in the injury to Crowley's face does not alter this conclusion.

matter of law.  O.C.G.A. § 16-5-60(b).  Put another way, Scott's criminal guilty

plea did not concern all the facts and circumstances and all the relevant factors

courts consider for a civil Fourteenth Amendment excessive force claim.  And, as

discussed, there is evidence in the record that Crowley was aggressive, actively

resisting, creating a disturbance, physically contacting Scott, and otherwise

posing a threat.  Thus, the ultimate question of whether Scott's conduct was

objectively unreasonable under the Fourteenth Amendment is appropriate for a

jury's determination.  Accordingly, Crowley is not entitled to summary judgment

on this ground.[9]

### 4.  Whether Scott is entitled to official immunity on the state-law claims

Crowley has asserted state-law claims for assault and battery against Scott.

Scott contends he is entitled to official immunity because there is insufficient evidence

he acted with actual malice.  "Under Georgia law, county law enforcement officers are

entitled to official immunity from suit and liability unless they '... act with actual malice or

an intent to injure when performing a discretionary act.'"  *Speight v. Griggs*, 579 F.

App'x 757, 759 (11th Cir. 2014) (quoting *Roper v. Greenway*, 294 Ga. 112, 751 S.E.2d

351, 352 (2013)), and citing Ga. Const. art. I, § 2, para. IX(d)); *Phillips v. Hanse*, 281

Ga. 133, 135, 637 S.E.2d 11, 13 (2006).  In the context of official immunity, "[a]ctual

---

[9] Crowley cites *Wiand v. Morgan*, 919 F. Supp. 2d 1342 (M.D. Fla. 2012) in support of his argument that Scott's guilty plea establishes his liability.  (Doc. 24-2 at 13).  That case involved a Ponzi scheme where the defendant had previously pled guilty to securities fraud, mail fraud, and wire fraud before the Receiver filed a civil action "to claw back 'false profits.'"  *Wiand*, 919 F. Supp. 2d at 1347.  The court concluded that the defendant's "admissions, his plea agreement, his testimony at his plea and sentencing hearings, and his criminal judgment [were] persuasive evidence supporting the Receiver's motion for partial summary judgment" and the forensic accountant's findings.  *Id.* at 1361-62.  Ultimately, the Court granted the Receiver's motion for summary judgment in light of the evidence that was "so one-sided," including the defendant's guilty plea, his testimony in the criminal proceedings, the forensic accountant's findings, and his own statements in a shredded letter, and the defendant's inability to "alter the overwhelming quantum of evidence the Receiver present[ed]."  *Id.* at 1351-68.  The court did not conclude that the guilty plea alone established the defendant's liability.

malice requires more than harboring bad feelings about another," *Adams v. Hazelwood*, 271 Ga. 414, 415, 520 S.E.2d 896, 898 (1999), and it does not include "implied malice," that is, "the reckless disregard for the rights or safety of others," *Murphy v. Bajjani*, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007). It refers instead to "a deliberate intention to commit a wrongful or illegal act," *Tittle v. Corso*, 256 Ga. App. 859, 862, 569 S.E.2d 873, 876 (2002), which "may be accomplished with or without ill will and whether or not injury was intended," *Adams v. Hazelwood*, 271 Ga. 414, 415, 520 S.E.2d 896, 898 (1999). "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs." *Selvy v. Morrison*, 292 Ga. App. 702, 704, 665 S.E.2d 401, 401 (2008).

Here, it is clear Scott was performing a discretionary act, and as discussed, there is a genuine issue of fact whether Scott used a leg sweep while Crowley was handcuffed and allegedly non-resistant, causing Crowley's face to be slammed onto a concrete floor. Therefore, there is a genuine issue of fact whether Scott acted with actual malice by using such force. *Cf. Hoyt v. Cooks*, 672 F.3d 972, 981 (11th Cir. 2012) ("[N]o reasonable jury could find that [the defendants] used their Tasers with the deliberate intent to do wrong. … [T]he Tasers were employed during a struggle to arrest [the plaintiff], who refused to let his arms be brought together and handcuffed."). Accordingly, Scott is not entitled to summary judgment on the state-law claims for assault and battery.

### 5.  Whether Scott is entitled to summary judgment on the punitive damages claim

Scott argues "[t]here is no evidence to support a claim for punitive damages." (Doc. 30-2 at 14).  With respect to the request for punitive damages underlying Crowley's federal claim, Scott conclusorily contends that "the conduct complained of … is not sufficient to warrant punitive damages."  (*Id.*).  In § 1983 actions, punitive damages are available against government officials sued in their individual capacities. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268-70 (1981).  To obtain punitive damages, Crowley must show that Scott's conduct was "motivated by evil motive or intent" or that it "involve[d] a reckless or callous indifference to the federally protected rights of [Crowley]."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Here, if the jury credits Crowley's version of events, it could reasonably find that Scott was, at the very least, callously indifferent towards Crowley's federally protected rights.  Accordingly, Scott is not entitled to summary judgment on Crowley's request for punitive damages underlying his excessive force claim.

With respect to Crowley's request for punitive damages underlying his state-law claims for assault and battery, Scott argues there is no evidence he "acted with an evil motive or with intentional disregard of rights."  (Doc. 30-2 at 15).  O.C.G.A. § 51-12-5.1(b) provides that "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  As discussed, there is a genuine issue of fact whether Crowley acted with actual malice.  Accordingly, Crowley's request for punitive damages underlying his state-law claims

survives summary judgment. *See Fields v. Atlanta Indep. Sch. Sys.*, 916 F. Supp. 2d 1348, 1375 n.44 (N.D. Ga. 2013) ("[B]ecause a genuine question exists as to whether [the defendant] acted with [actual] malice, [the plaintiff's] request for punitive damages survives summary judgment.").

### D.  Briggs's Motion for Summary Judgment

Briggs argues she is entitled to qualified immunity on the failure-to-intervene claim because she did not violate Crowley's constitutional rights and the law was not clearly established that her conduct was unlawful.  (Doc. 33-1 at 19).  Briggs also contends she is entitled to summary judgment on the state-law claims against her because there are no state-law claims for her alleged conduct, and even if there were, she would be entitled to official immunity.  (*Id.* at 24).

#### 1.   Whether Briggs is entitled to qualified immunity on the failure-to-intervene claim

Crowley asserts Briggs violated his constitutional rights and clearly established law because she failed to intervene when Scott allegedly used excessive force against him.  Specifically, Crowley argues there is a genuine fact issue whether Briggs failed to intervene because she "was in the immediate vicinity of the sweep incident."  (Doc. 40-1 at 9).  "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence."  *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010).  However, it is well-settled that a defendant cannot be held liable for failing to intervene if she was not in a position to intervene and otherwise had no reasonable opportunity to do so.  *See Ensley v. Soper*, 142, F.3d 1402, 1407-08 (11th Cir. 1998); *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996); *Marantes v. Miami-Dade Cty.*, ___F. App'x___, 2016 WL 1696838, at *6 (11th Cir.

2016); *Williams v. Scott*, 433 F. App'x 801, 805 (11th Cir. 2011); *see also Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003).

Briggs testified that Scott's leg sweep was done in a "split second" (Doc. 24-4 at 18:2-19:18), and Crowley's description of the takedown is consistent with Briggs's testimony.  Specifically, Crowley testified that he was looking away from Scott and "all of a sudden [he] see[s] the ceiling" and that "[i]t was almost as if [Briggs] didn't expect it coming and she was being pulled to the ground as well."  (Doc. 28-1 at 88:20-21, 89:20).  Crowley elaborated that Scott "slammed [him] into the ground so hard [he] actually pulled [Briggs] down with [him] …. It actually pulled her like she wasn't expecting it either."  (Doc. 28-1 at 89:23-25).  The video of the incident also shows that the actual takedown from the leg sweep took less than five seconds.[10]  (Doc. 38-6).  Further, it is undisputed that Briggs had no prior warning Scott was going to take Crowley down with a leg sweep.  (Docs. 28-1 at 125:11-14; 30-1 ¶ 19; 38-2 ¶ 19).

Even though Briggs had her hand on Crowley, given the suddenness and quickness of the takedown, no reasonable jury could find that there was a "sufficient duration" of time to give Briggs a "realistic opportunity to attempt to prevent" it.  *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) ("The three blows were struck in such rapid succession that [the defendant] had no realistic opportunity to attempt to prevent them.  This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator.").  Briggs's presence alone is insufficient under these facts.  *See Burgess v. Fischer*, 735 F.3d 462, 475-76 (6th Cir. 2013) (concluding that the defendants' "mere presence"

---

[10] While the video does not clearly show each Defendant's specific actions leading up to or during the leg sweep, the video does sufficiently show duration to conclude that the actual takedown from the leg sweep took less than five seconds.

during a takedown that did not last more than 10 seconds was insufficient to impose liability and that the plaintiffs "failed to demonstrate that the incident lasted long enough for [the defendants] to both perceive what was going on and intercede to stop it"); *cf. Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir. 2000) (concluding there was a genuine issue of fact whether the defendant had an opportunity to intervene where one defendant testified the incident lasted 5-10 seconds and another testified it may have lasted two minutes).  And Briggs "had no reason to expect the use of excessive force until after it had occurred."[11]  *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996) (concluding there were no facts from which a jury could find the defendant failed to intervene when he did not "have an indication of the prospective use of excessive force" by his codefendant who fired a weapon).  Accordingly, because there is insufficient evidence Briggs violated Crowley's constitutional rights, she is entitled to qualified immunity.

### 2.  Whether Briggs is entitled to summary judgment on the state-law claims

Briggs argues she is entitled to summary judgment on any state-law claim for her alleged failure to intervene and "cover-up" of Scott's alleged assault and battery because there are no state-law torts for such conduct.  (Doc. 33-1 at 24).  Further, even if there were, Briggs argues she would be entitled to official immunity because there is insufficient evidence she acted with actual malice.  Crowley makes no response to these arguments, nor did he state in his complaint what the legal basis for the alleged

---

[11] Crowley also relies on the evidence that "Briggs repeatedly lied during the internal investigation of the incident."  (Doc. 40-1 at 9).  However, this alleged conduct was done after the incident and thus does not demonstrate Briggs had a reasonable opportunity to intervene during the actual takedown.

"cover-up" claim is.[12]  In any event, the Court agrees Briggs is entitled to official

immunity because there is insufficient evidence she acted with actual malice.  *See*

*Phillips*, 281 Ga. at 135, 637 S.E.2d at 13.  Indeed, Crowley himself testified that he did

not believe Briggs acted with malicious intent.  (Doc. 28-1 at 125:7-10).  Accordingly,

Briggs is entitled to summary judgment on any state-law claim against her.

### III.   CONCLUSION

For the foregoing reasons, Crowley's motion for partial summary judgment (Doc.

24) and Scott's motion for summary judgment (Doc. 30) are **DENIED**.  Briggs's motion

for summary judgment is **GRANTED**.  (Doc. 33).

**SO ORDERED**, this 23rd day of May, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[12] In the count for assault and battery, Crowley simply alleged that "Briggs failed to intervene to prevent … Scott's assault and battery … and then acted to cover up Scott's unlawful act …." and that the "Defendants are liable to Plaintiff, jointly and severally, for all damages Plaintiff sustained on account of … Scott's assault and battery upon Plaintiff's person."  (Doc. 1 ¶¶ 64-65).